

| | |
|---|---|
| Attorney's Office of the Russian Federation | 28 July, 2004. |
| Ryazan District Attorney's Office | To Attorney General of the United States, |
| **Traffic Department** | |
| 390013, Vokzalnaya Str. 28, Ryazan, Russian Federation | |

28.07.2004  #  133 np - 03

REQUEST FOR LEGAL AID

Dear Sir,

Traffic Department of Ryazan District Attorney's Office pays due respect to the highly qualified law enforcement bodies of the United States and seeks your legal aid in criminal case # 12003260528.

According to the Russian Federation legislation criminal proceedings consist of prejudicial and judicial inquiries. Prejudicial inquiry takes place from the moment of the criminal act being reported to the moment of the case being sent by the attorney to the court for judicial scrutiny. After a thorough consideration of a criminal act report, the attorney is eligible to institute legal proceedings or to waive an inquiry. In the presence of a cause and sufficient grounds set by the Criminal Procedural Code of the Russian Federation the investigation officer with the agreement of the attorney institutes legal proceedings and the resolution of the fact is passed. The resolution being passed, the investigation officer starts prejudicial inquiry. It may be conducted by the investigation officers of the Attorney's Office, the Department of the Interior, the Federal Security Service, Drug and Psychotropic Substances Control Service. Conducting the prejudicial inquiry, the investigator is empowered: to direct the inquiry; to make decisions of committing investigative actions and other legal proceedings except for the cases where according to the Criminal Procedural Code of the Russian Federation they are subject to the attorney's sanction; to address orders, wits and inquiries that are mandatory for all juridical and physical persons. When there is a demand for conducting interrogations, surveys, captions, search, forensic enquiries and other legal proceedings on the territory of another state, the investigation officer is eligible to submit a request for their fulfillment to the competent body or the official according to the international treaties and agreements based on the reciprocity principle (see sections 5, 21, 38, 145, 146, 149, 151 and 453 of the Criminal Procedural Code of the Russian Federation).

The Attorney General of the Russian Federation supervises prejudicial inquiry bodies and inferior attorneys.

Criminal case # 12003260528 on the fact of the criminal act as provided in subdivision 3 of section 30; subdivision 4 of section 159 and subdivision 1 of section 188 of the Criminal Code of the Russian Federation is being investigated by Traffic Department of Ryazan District Attorney's Office. The head of the department supervises the investigation.

Traffic Department of Ryazan District Attorney's Office assures the competent law enforcement bodies of the United States that the request for legal aid has been drawn up in compliance with the legislature of the Russian Federation by the competent bodies within their legal bounds.

The fulfillment of the legal proceedings on the territory of the United States is necessary to ensure the objective character of the investigation, to arraign the offenders, to bring the case to

2

Moscow district court of the city of Ryazan. The hearing of the case is to begin in 2004.

Traffic Department of Ryazan District Attorney's Office avouches that all the facts and documents received by this request for legal aid are to be used to accumulate the evidence, to fulfill the prejudicial inquiry and a thorough judicial scrutiny of the case. They are not to be made public or used in any other way.

## THE FACTS OF THE CASE

Criminal case # 12003260528 was instituted by Deputy Attorney of Ryazan region on the grounds of the facts as provided in subdivision 3 of section 30, clause 'a' of subdivision 3 of section 159 and subdivision 1 of section 293 of the Criminal Code of the Russian Federation.

On September 11, 2003, the case on a charge of subdivision 1 of section 293 against customs officers M.N. Satina and T.S. Romanova was dismissed.

On November 25, 2003, this case was combined with case # 7129 instituted by the Inquest Department of Sheremetyevo customs office of the city of Moscow on the grounds of the crime provided in subdivision 1 of section 188 of the Criminal Code of the Russian Federation.

The preliminary investigation established that on June 1, 2002, "GruppTorg Ltd." (Moscow) concluded a foreign trade contract with "Clobex Investment Corp." (U.S.A.). According to the contract "GruppTorg Ltd." is to sell silicon plates (240 000 vibration sensors, mechanical and thermal stress sensors, shift sensors KPFVMN-1 at the cost of U.S. $ 1,680,000) to "Clobex Investment Corp.". In compliance with the contract on July 5, 2002, "GruppTorg Ltd." made an agency contract with "Kogorta Ltd." (Ryazan) for customs brokerage of the items (KPFVMN-1 sensors, 240 00 in number) as merchandise export through Ryazan Customs Office. The receiver of the goods was "Briko Holzkohle-Productions GmbH" (Germany) by the order of "Clobex Investment Corp." (U.S.A.).

In July, 2002, "Kogorta Ltd." in compliance with the agency contract with "GruppTorg Ltd." declared 240 000 vibration sensors, mechanical and thermal stress sensors, shift sensors KPFVMN-1 at the customs value of 53,128,992 rubles and the contract cost of 1,680,000 dollars on Ryazan region customs office. The goods were produced by "Sansil Ltd." (Ryazan) and were being exported under foreign trade contract # K-010702 concluded on July 1, 2002. The contracting parties were "GruppTorg Ltd." (seller) and "Clobex Investment Corp." (buyer). In behalf of "Clobex Investment Corp.", "Briko Holzkohle-Productions GmbH" (Germany) acted as a receiver of the goods.

When the cargo was in bond, the customs inspectors of Ryazan Customs Office selected its samples that were sent to the Central Expert-criminalistic Department of the State Customs Service for commodity-cost expertise. Since the value added tax return was too big, the additional documents confirming the customs value of the cargo were asked for. The documents were received on the following day. But since the term of the customs brokerage was exceeded, the transition of the cargo under this customs declaration was banned.

On September 18, 2002, the cargo was declared again under customs declaration # 10112040/0005752. By this moment the expert report of the Central Expert-criminalistic Department of the State Customs Service had been received. It confirmed the value as provided in the declaration. Relying on the documents received, the transition of the cargo was permitted. The cargo was carried to Sheremetyevo-2 Airport to send it to the receiver "Briko Holzkohle-Productions GmbH" in behalf of "Clobex Investment Corp.".

While the cargo was in bonded warehouse of Sheremetyevo-2 Airport, it was alleged that the cost of the goods delivered was overestimated by the seller in order to receive the value added tax return and the silicon plates were not sensors. The samples of the cargo were received for another examination.

In the course of the investigation the experts of the Russian Academy of Sciences made a conclusion that the samples of the cargo exported were pure silicon (99.9 % of purity). The plates measuring 5 by 7 mm. were not sensors and not appropriate for further processing. Thus, there is enough evidence to suppose that the exporter deliberately declared the goods as sensors in order to overestimate their customs value and to receive the value added tax return from the

3

Russian Federation budget. In other words, the exporter's actions may be classified as a crime provided in subdivision 4 of section 159 of the Criminal Code of the Russian Federation. When the criminal case was initiated, it was provided in clause 'a', subdivision 3 of section 159, but since the Criminal Code of the Russian Federation was amended on December 16, 2004, this criminal act is subject to other parts of the section. In addition, since the exporter made only an attempt to commit the crime, his actions must also be classified under subdivision 3, section 30 of the Criminal Code of the Russian Federation.

### THE AID DEMANDED ON THE TERRITORY OF THE UNITED STATES

The preliminary investigation demanded that a number of legal proceedings be carried out on the territory of the United States. Namely, it is necessary to ascertain the managers of "Clobex Investment Corp.", to question them about the relations between "Clobex Investment Corp." and "Briko Holzkohle-Productions GmbH", to establish whether "Clobex Investment Corp." gave "Briko Holzkohle-Productions GmbH" a commission to receive the cargo from "GruppTorg Ltd.". Besides, it is vital to determine the scope of activity of "Clobex Investment Corp.", why it wanted to buy the 'sensors' and how it was going to use them. It is essential to determine whether the company regularly buys this kind of commodities and to receive the copies of the contracts between the parties. Above all, it is necessary to establish if there were money transactions on the accounts of "Clobex Investment Corp." in connection with the contracts.

The company's address:
1220, N. Market Street, Suit 6006,
the city of Wilmington, Country of new Castle, Delaware, U.S.A.
Clobex Investments Corp.

On the grounds of the facts stated above and governed by the Mutual legal aid in criminal cases agreement between the Russian Federation and the United States (Moscow, June 17, 1999), Traffic Department of Ryazan District Attorney's Office makes a request to the law enforcement bodies of the United States to fulfill the following actions:

1. To ascertain the managers of "Clobex Investment Corp.", to question them about the relations between "Clobex Investment Corp." and "Briko Holzkohle-Productions GmbH"; to establish whether "Clobex Investment Corp." gave "Briko Holzkohle-Productions GmbH" a commission to receive the cargo from "GruppTorg Ltd."; to determine the scope of activity of "Clobex Investment Corp.", why it wanted to buy the 'sensors' and how it was going to use them; to determine whether the company regularly buys this kind of commodities; to establish if there are representatives of "Clobex Investment Corp." and their residence in Russia if there is any.
2. To receive the copies of the contracts between the companies.
3. To collect intelligence about the transactions on the accounts of "Clobex Investment Corp." in connection with the contracts.

While collecting the evidence, Miranda rule must be strictly observed. The resulting document must contain the following information: evidence in the first person; the date and the place of the interrogation; the time of its start and its ending, the name, post and rank of the interrogator and the author of the resulting report; the name, surname, residence, date of birth and other personal data about the interrogated person; the fact that Miranda rule was observed; the fact that the person read the report and confirmed its correctness. The resulting document must be signed by the interrogator and the witness. The witness must confirm by his signature that he was mirandized, read the testimony and testifies the correctness of the report.

Traffic Department of Ryazan District Attorney's Office is deeply grateful for your cooperation in this criminal case.

Appendix: abstracts of the Criminal Code of the Russian Federation.
The answer to this request must be sent to:

4

390013, Ryazan, Vokzalnaya Street 28,
Ryazan, Russian Federation
Traffic Department of Ryazan District Attorney's Office
Tel. +7 (0912) 79-88-02, fax. +7 (0912) 79-88-81
e-mail: bubenev@mail.ru

Investigation officer
Traffic Department of Ryazan District Attorney's Office                                    S.A. Bubenev

# THE ABSTRACTS OF THE CRIMINAL CODE
# OF THE RUSSIAN FEDERATION
## SECTION 30.
### *Preparation for a crime and an attempt to commit it*

1. Preparation for a crime is search for, making or adaptation of the means or instruments of the crime; search for accomplices; a criminal conspiracy or a deliberate arrangement of conditions for the crime, if the crime was not completed under the circumstances independent of the person.

2. The person incurs criminal responsibility for a preparation only for grave or particularly grave offences.

3. The person is guilty of an attempt to commit a crime if he committed aforethought actions (inactions) aimed at committing the crime, and if the crime was not completed under the circumstances independent of the person.

## SECTION 159.
### *Fraud*
### *(as amended on December 8, 2003. # 162-FL)*

1. The person guilty of a fraud that is when he obtains another's property by means of a deception or a breach of trust, –

    may be sentenced to payment of a fine of not more than 120 thousand rubles or not more than an annual revenue of the defendant; or public works for not more than 180 hours; or correction works from six months to one year; or apprehension from two to four months; or imprisonment for not more than two years.

2. The person guilty of an aforethought gang-fraud or a fraud inflicting a big loss of money, –

    may be sentenced to payment of a fine of not more than 300 thousand rubles or not more than his double annual revenue; or public works for 180 to 240 hours; or correction works from one to two years; or imprisonment for not more than five years.

3. The person guilty of using his official duties to commit a fraud or a fraud inflicting a big loss of money, –

    may be sentenced to payment of a fine of 100 to 500 thousand rubles or his revenue for one to three years; or imprisonment from two to six years with/without a fine of not more than ten thousand rubles, or his monthly income.

4. The person guilty of an aforethought gang-fraud that inflicted a grand loss of money, –

    may be sentenced to imprisonment for not more than ten years with/without a fine of not more than one million rubles or the defendant's income for not more than three years.

## SECTION 293.
### *Dereliction of duty*
### *(as amended on December 8, 2003. # 162-FL)*

1. The person guilty of a dereliction or negligence of his duty as a result of unconscientious attitude to his job, if it inflicted a great loss, –

    may be sentenced to a fine of not more than 120 thousand rubles or a monthly income of the defendant; or public works for not more than 180 hours; or correction works from six months to one year; or apprehension for not more than three months.

2. If the same criminal act inflicted a severe injury on another person or his death by negligence, the offender

    may be sentenced to imprisonment for not more than five years with/without a prohibition to hold some offices or to be involved in some activities for not more than three years.

3. If the same criminal act inflicted death of more than two people, the offender

    may be sentenced to imprisonment for not more than seven years with/without a prohibition to hold some offices or to be involved in some activities for not more than three years.

Note: The great loss in this section is a loss of more than 100 thousand rubles.

### SECTION 188.
### Smuggling

1. The person guilty of smuggling that is transition of a large amount of goods and other commodities with the exception of the goods enumerated in the second part of the section through the customs borders of the Russian Federation, committed with a fraudulent use of the documents or means of customs identification or connected with customs evasion or untrue declaration, –

may be sentenced to a fine of 100 to 300 thousand rubles or annual or double annual income of the defendant; or imprisonment of not more than five years.

2. The person guilty of transition of the following objects through the customs borders of the Russian Federation: narcotic substances; psychotropic, virulent, poisonous, toxic, explosive, radioactive substances; radioactive sources; nuclear materials; firearms; explosive systems; ammunition; weapons of mass destruction; delivery vehicles; other armament; other defense technology; the same as materials and equipment that may be used to create weapons of mass destruction and its delivery vehicles; other armament; other defense technology whose transition through the customs borders of the Russian Federation is specially regulated; strategical raw materials or objects of cultural value whose transition through the customs borders of the Russian Federation is specially regulated, if the action was committed with a fraudulent use of the documents or means of customs identification or connected with customs evasion or untrue declaration, –

*(as amended on May 7, 2002. # 50-FL)*

may be sentenced to imprisonment of three to seven years and a fine of not more than one million rubles or the defendant's income for not more five years.

3. The same criminal acts as provided in the first and second parts of the section committed by an officer with an abuse of power; with the use of violence to the customs officer,

may be punished by imprisonment of five to ten years with/without a fine of not more than ony million rubles or the defendant's income for not more five years.

4. The same criminal acts as provided in the first, second and third parts of the section committed by an organized gang, –

may be punished by imprisonment of seven to twelve years with/without a fine of not more than ony million rubles or the defendant's income for not more five years.

This is hereby to certify that the abstracts are correct.

Investigation officer
Traffic Department of Ryazan District Attorney's Office                                    S.A. Bubenev